Attia Law Firm, LLC
By: Adam A. Attia, Esquire
PA ID: 326378
145 Greenwood Ave, Ste 400
Wyncote, PA 19095
adam@attialawfirm.com          **Attorney for Plaintiff Olubunmi Obayemi**
(610)627-5282

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLUBUNMI OBAYEMI, | : |
| Plaintiff, | : |
| v. | : CASE NO.: |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | : |
| Defendant. | : |

## COMPLAINT

### I.    INTRODUCTION

This civil action arises from the National Board of Medical Examiners' ("NBME" or "Defendant") unjust and discriminatory decision to permanently bar Ms. Olubunmi Obayemi ("Plaintiff"), a qualified individual with a disability, from ever taking the United States Medical Licensing Examination ("USMLE") Step 1 and Step 2 Clinical Knowledge ("Step 2 CK") examinations—examinations she has never attempted. NBME's decision is based solely on Plaintiff's prior failures of the now-discontinued Step 2 Clinical Skills ("Step 2 CS") exam, which occurred while Plaintiff was unknowingly suffering from an undiagnosed disability.

By rigidly enforcing an inflexible eligibility rule—despite sponsorship from a state medical board—NBME has imposed a permanent and career-ending penalty without fair process, individualized consideration, or accommodation. NBME's actions violate the Americans with Disabilities Act ("ADA") and the Due Process Clause by arbitrarily

extinguishing Plaintiff's ability to pursue medical licensure based on outdated criteria that no longer exist and bear no rational relationship to her present qualifications.

Plaintiff seeks declaratory and injunctive relief requiring NBME to allow her to sit for USMLE Step 1 and Step 2 CK with appropriate accommodations, together with all other relief deemed just and proper. In support of her claims, Plaintiff avers as follows:

## II.   <u>JURISDICTION AND VENUE</u>

1.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under federal law, including Title III of the ADA, 42 U.S.C. § 12181 et seq., and the Fourteenth Amendment to the U.S. Constitution, enforceable via 42 U.S.C. § 1983.

2.      This Court also has jurisdiction under 28 U.S.C. § 1343 because Plaintiff seeks to redress the deprivation of civil rights.

3.      Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant NBME resides and has its principal office in this District, Philadelphia, Pennsylvania, and a substantial part of the events or omissions giving rise to the claims occurred in this District. NBME made the decisions and enforced the policies at issue from its Philadelphia headquarters.

## III.   <u>PARTIES</u>

5.      Plaintiff is an adult resident of Texas, originally from Nigeria

6.      Plaintiff graduated medical school from the Windsor University School of Medicine, in Saint Kitts and Nevis, in 2013.

7.      Plaintiff immigrated to the United States in 2014.

8.      Plaintiff is an "individual with a disability" as defined by the ADA, 42 U.S.C. § 12102(1).

9.      Defendant NBME is a District of Columbia nonprofit corporation with its principal place of business at 3750 Market Street, Philadelphia, PA 19104.

10.     Defendant NBME develops, administers, and oversees the USMLE, a standardized examination required for medical licensure in every U.S. state.

11.     Defendant NBME offers the USMLE examination in conjunction with the Federation of State Medical Boards ("FSMB"), which is a federation of state licensing boards.

12.     NBME is a "private entity" that offers examinations related to professional licensing within the meaning of Title III of the ADA, 42 U.S.C. §§ 12181(7), 12189.

13.     NBME is thus subject to Title III's mandate to avoid disability-based discrimination and to provide reasonable accommodations in the administration of its exams.

14.     At all relevant times, NBME acted through its officers, employees, and agents in enforcing the policies and decisions challenged herein.

## IV.    FACTUAL BACKGROUND

15.     Plaintiff has lived with a persistent stutter, fluency disorder, since childhood.

16.     This condition is characterized by involuntary disruptions in the flow of speech including repetition of sounds or syllables, prolonged pauses or "blocks" in speech, and visible struggle to produce words.

17.     In everyday settings, Plaintiff's speech may be slow or halting.

18.     During timed, high-pressure evaluations – such as standardized exams or clinical skill assessments – Plaintiff's fluency impairments become significantly more pronounced.

19.     The stress and time constraints exacerbate Plaintiff's stuttering, making it difficult to respond or communicate as effectively as others without her condition.

20.    Plaintiff's disorder substantially limits the major life activity of communicating compared to most people.

21.    Plaintiff, due to lack of resources and understanding of the disorder in her home country, lived her life with a disability that severely impacted her day to day life but had no formal diagnosis until 2024.

22.    Plaintiff was formally diagnosed with Childhood Onset Fluency Disorder in August 2024, when a licensed speech-language pathologist evaluated her and confirmed the condition.

23.    Plaintiff's evaluation documented severe stuttering symptoms, including frequent speech blocks, repetitions, sound prolongations, and secondary physical tension, consistent with Childhood Onset Fluency Disorder.

24.    The clinician noted that these symptoms would naturally worsen under stress and time pressure.

25.    Importantly, the disorder was present, albeit undiagnosed, during Plaintiff's medical education and her attempts at the Step 2 CS exam.

26.    Thus, at all times relevant to Plaintiff's exam failures, Plaintiff was a person with a disability, though she did not yet know to seek accommodations.

**Step 2 CS**

27.    Step 2 CS (Clinical Skills) was a component of the USMLE that assessed an examinee's ability to interact with patients in simulated clinical encounters.

28.    The exam was administered in person and was strictly timed; examinees had to speak with "standardized patients" and perform oral presentations of findings under significant time constraints—effective communication and fluency were essential to success.

29.     Plaintiff, unaware that her stuttering was a medical condition subject to accommodation, attempted the Step 2 CS exam four times between 2014 and 2018.

30.     Each attempt ended in failure, with score reports indicating deficits in spoken communication and interpersonal skills.

31.     On information and belief, Plaintiff's communication difficulties during these exams were directly attributable to her untreated disability – she struggled to get through the required clinical scenarios within the allotted time due to stuttering blocks and related anxiety.

32.     At the time of Plaintiff's Step 2 CS attempts, the USMLE program, through NBME, permitted up to six attempts per Step exam.

33.     The applicable rule stated that an examinee could take each Step, including Step 2 CS, a maximum of six times—Plaintiff's four attempts were within this limit.

34.     Notably, Step 2 CS was discontinued by NBME in early 2020 and has not been administered since.

35.     Plaintiff had hopes of continuing with her testing, but to her surprise the Step 2 CS exam was suspended for 18 months and then suddenly discontinued—even the result transcript states "examinee may not have had opportunity to retest."

36.     Plaintiff was prevented from testing, then the test was discontinued, and then she was permanently barred from taking any of the exams—eliminating any chance of Plaintiff to realize her dream of becoming a doctor.

37.     After 2020, passing Step 2 CS was no longer a requirement for medical licensure—for U.S. medical graduates, the exam was eliminated; for international graduates, alternative pathways were provided.

38.    Thus, although Plaintiff failed Step 2 CS four times, she cannot retake it – the exam no longer exists.

39.    However, Plaintiff still must pass Step 1 and Step 2 CK to become license-eligible.

40.    Plaintiff attempted Step 1 without passing while under the 6-attemp limit, but has never been able to take the Step 2 CK exam—solely because NBME has blocked her from registering.

41.    In 2021, NBME implemented a significant change to its attempt limit policy. Effective July 1, 2021, the maximum number of attempts allowed for any USMLE Step exam was reduced from six to four.

42.    Furthermore, NBME applied this new four-attempt limit retroactively to all prior attempts.

43.    According to NBME's announcement, after the policy change, any examinee who had already attempted a Step exam four or more times without passing would become ineligible to take that Step exam, or any other Step.

44.    In other words, an individual who, by mid-2021, had four failures on any Step was automatically barred from further participation in the USMLE sequence going forward.

45.    This retroactive rule encompassed attempts on the discontinued Step 2 CS as well.

46.    The new policy's effect on Plaintiff was drastic—because she had four unsuccessful Step 2 CS attempts by 2020 and had not passed, NBME deemed her permanently ineligible to take any USMLE Step exam after July 1, 2021.

47.    This ineligibility was triggered even though Plaintiff had not exhausted the previously allowed six attempts, and even though her four attempts were disability distorted exams, the exam no longer exists.

48.    In practical terms, NBME's rule change slammed the door on Plaintiff's licensure journey: she would never be allowed to take Step 1 or Step 2 CK, solely due to her four prior failures on Step 2 CS.

49.    NBME imposed this ban without any individualized review or exception process for individuals with extenuating circumstances such as a newly recognized disability.

50.    Plaintiff simply received notice when attempting to register for another exam that she could not proceed because of the four-attempt rule.

51.    NBME's four-attempt rule operates as an "eligibility criteria" for the service of taking USMLE exams.

52.    Under the ADA and its implementing regulations, it is unlawful for a private testing entity to impose eligibility criteria that "screen out or tend to screen out an individual with a disability" from fully enjoying the entity's services, unless such criteria are necessary for the operation of the service. 28 CFR 36.301.

53.    Plaintiff alleges that NBME's strict attempt limit, as applied to her, violates this provision: the rule, especially as retroactively applied, has screened her out of the USMLE (and thus medical licensing) specifically because her disability caused her to need more than four attempts to pass an exam—or at a minimum, one opportunity to take the next exam with the proper accommodations for her formal diagnosis.

54.    There is no legitimate necessity that justifies outright barring Plaintiff from further attempts, particularly when reasonable accommodations could enable her to succeed.

55.     Indeed, NBME's own practices recognize that exceptions to the attempt limit may be warranted on a case-by-case basis – as evidenced by the policy allowing state medical boards to sponsor an additional attempt for a candidate.

**State Medical Board Sponsorship and NBME's Denial**

56.     In light of Plaintiff's ineligibility status, Plaintiff sought relief through the avenue NBME itself provides for extraordinary cases: state board sponsorship.

57.     NBME's published policy indicates that "candidates are not allowed more than four (4) attempts on each Step exam, unless a state medical board sponsors the candidate for a fifth attempt on a given Step exam."

58.     The only exception to the four-attempt limit is a one-time additional attempt if a state licensing board requests it on the examinee's behalf, fully aware of the examinee's exam history.

59.     To facilitate this, NBME (through FSMB) distributed a "Petition for Exception to USMLE 4 Attempt Limit Policy" form to all state medical boards, by which a board can formally sponsor an examinee for an extra attempt.

60.     In early 2024, Plaintiff submitted information about her situation to the Georgia Composite Medical Board ("the Board"), which is the state agency authorized to license physicians in Georgia.

61.     Plaintiff provided the Board with her medical documentation, including the new diagnosis of her disability, her USMLE transcript, and an explanation of how her disability likely affected her past exam performance.

62.     On February 1, 2024, after consideration, the Board voted in an open meeting to approve a petition on Plaintiff's behalf for an exception to the four-attempt limit.

63.     The Board's meeting minutes reflect its determination that Plaintiff should be allowed to take the USMLE Step 1 and Step 2 CK despite her prior four attempts on Step 2 CS, in order to continue her path to licensure.

64.     The Board's staff thereafter submitted the official petition/request to NBME/FSMB, as per NBME's policy, sponsoring Plaintiff for an additional attempt on the necessary Steps.

65.     By making this petition, the Board explicitly acknowledged that it was "fully informed of [Plaintiff's] prior examination history" (i.e. her four Step 2 CS failures) and nevertheless supported giving her another chance.

66.     In essence, the state's licensure authority concluded that Plaintiff's circumstances merited an exception and that allowing her to attempt the remaining exams was appropriate.

67.     Under NBME's own stated policy, this should have triggered NBME to grant Plaintiff one more eligible attempt for Step 1, and by extension Step 2 CK.

68.     However, NBME denied the petition and refused to allow Plaintiff to register for any exam.

69.     In correspondence dated March 2024, NBME stated that Plaintiff remained ineligible under the applicable rules, notwithstanding the Board's sponsorship.

70.     NBME offered no specific reason for deviating from its exception policy – it did not claim the Board's request was procedurally improper or that Plaintiff failed to meet any published criteria.

71.     NBME simply reiterated that Plaintiff had four attempts and no passes, and thus could not take further exams.

72.    In effect, NBME treated the exception request as a nullity, giving it no meaningful consideration.

73.    NBME provided Plaintiff no opportunity to appeal or to present additional information; there was no hearing, no written decision addressing Plaintiff's disability or the Board's findings, and no guidance on any alternative path.

74.    NBME's summary denial of the Board-sponsored attempt was arbitrary and departed from the process one would expect when a state agency intercedes on an examinee's behalf.

75.    At this point, Plaintiff has exhausted all avenues short of litigation.

76.    Plaintiff cannot reapply for the USMLE through any other mechanism.

77.    The state medical board's backing – which one would reasonably assume to be persuasive, if not binding, under NBME's own policies – has been effectively ignored.

78.    Plaintiff remains barred from Step 1 and Step 2 CK solely because of NBME's enforcement of the four-attempt rule.

79.    Meanwhile, Plaintiff's disability is now well-documented and could be accommodated with straightforward measures (for example, extended time or other modifications to mitigate the impact of her stutter on exam performance).

80.    NBME, however, will not even allow her to sit for the exams with or without accommodations, due to the eligibility bar.

81.    The consequences of NBME's actions for Plaintiff are profound and irreparable.

82.    Without the ability to take and pass Step 1 and Step 2 CK, Plaintiff can never become a licensed physician in the United States.

83. Years of medical training and her career aspirations have been brought to a dead stop.

**Additional Examinations**

84. In May 2025, Plaintiff took the National Assessment Collaboration Examination, Canada's equivalent to the Step 2 CS exam, which assesses clinical skills and is a requirement for ECFMG certification for International Medical Graduates.

85. Plaintiff submitted and was approved for accommodations due to her disability.

86. Plaintiff Passed the National Assessment Collaboration Examination.

87. Additionally, Plaintiff took the clinical assessment for the UK Foundation Programme (UKFP) and received a passing result in December 2025.

88. Plaintiff, with accommodations for her disability, is able to pass clinical assessments in Canada and the United Kingdom.

89. NBME precluding Plaintiff from pursuing her examinations, despite sponsorship from the Board and despite her diagnosed disability, effectively eliminates any chance of licensure for Plaintiff.

90. Plaintiff has suffered significant emotional distress, professional setback, and financial loss—in the form of missed job opportunities and wasted educational investment.

91. Every single day that passes prolongs Plaintiff's exclusion from the medical profession and exacerbates the harm – an injury that money damages cannot fix.

**V.    CLAIMS FOR RELIEF**

**COUNT I**
**Violations of the Americans with Disabilities Act, 42 U.S.C. § 12189 et. seq.**

92. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

93.     Defendant NBME is a private entity that offers examinations related to professional licensing (the USMLE)—and  is therefore subject to Title III of the ADA, specifically 42 U.S.C. § 12189, which requires that "any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes" must offer such exams "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements."

94.     NBME is also a "public accommodation" as defined by 42 U.S.C. § 12181(7), as it is an entity that provides educational and testing services to the public.

95.     Plaintiff is an individual with a disability, a substantial limitation in speaking/communicating, within the meaning of the ADA.

96.     Plaintiff meets the essential eligibility requirements for taking the USMLE Step 1 and Step 2 CK – she is a medical school graduate who, but for NBME's attempt limit rule, would be qualified to register and sit for these exams.

97.     With appropriate accommodations for her disability (such as extended time for oral responses or other measures), Plaintiff can demonstrate the knowledge and skills the exams are intended to measure.

98.     Plaintiff has a record of a disability and is regarded by NBME, through her provided documentation and the petition on her behalf, as having a disability.

**Failure to Accommodate and Ensure Accessible Examination**

99.     NBME has violated 42 U.S.C. § 12189 and its accompanying regulations by failing to administer the Step 1 and Step 2 CK exams to Plaintiff in a manner that "best ensure[s]" that the results accurately reflect her aptitude rather than her disability.

100.    Department of Justice regulations explicitly require testing entities to offer appropriate accommodations to disabled examinees and to modify policies as needed to permit accessible testing. See 28 C.F.R. § 36.309.

101.    Federal law requires NBME to administer licensing exams in a manner that 'best ensures' the results accurately reflect an examinee's aptitude, not their disability." See Katz v. Nat'l Bd. of Med. Exam'rs, No. 17-1329, 2018 WL 4517601, at *2-3 (3d Cir. Sept. 25, 2018) (citing 28 C.F.R. § 36.309(b)(1)(i)).

102.    Testing entities cannot apply overly rigid criteria or ignore individualized evidence. The ADA regulations demand an 'individualized assessment' of a disability's impact, and reports from professionals who personally evaluated the candidate should take precedence over those of reviewers who never met the person. See Ramsay v. Nat'l Bd. of Med. Exam'rs, 968 F.3d 251, 259-60 (3d Cir. 2020).

103.    In Plaintiff's case, NBME effectively refused to allow any accommodation because it refused to allow Plaintiff to test at all.

104.    By rigidly enforcing the attempt limit without processing the State Board exception petition requesting state sponsorship, NBME denied Plaintiff the chance to take the exams with accommodations that would mitigate the effects of her disability.

105.    This action defeats the core purpose of the ADA's exam provisions, which is to ensure that exams measure an individual's knowledge or skills "rather than reflecting the individual's disability."

106.    Had NBME granted Plaintiff an additional attempt with reasonable accommodations (such as extra time for speaking tasks or other auxiliary aids), the exam results would more accurately reflect her true abilities.

107.    NBME's refusal to do so is a failure to provide a necessary modification and accommodation, in violation of 28 C.F.R. § 36.309(b)(1), (b)(2).

**Discriminatory Eligibility Criterion (Attempt Limit)**

108.    NBME's blanket four-attempt limit, as applied to Plaintiff, constitutes an eligibility criterion that screens out individuals with disabilities, in violation of 42 U.S.C. § 12182(b)(2)(A)(i) and 28 C.F.R. § 36.301.

109.    The attempt limit policy screened out Plaintiff from further participation in the USMLE specifically because her disability contributed to multiple exam failures – a circumstance more likely to befall a disabled examinee who wasn't accommodated.

110.    A testing policy like a strict attempt limit that 'tend[s] to screen out' individuals with disabilities is impermissible unless it is 'necessary' for the exam's purpose. 42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a).

111.    Under the ADA, such a criterion is unlawful unless it is shown to be necessary for the provision of the service.

112.    NBME's own precedent shows that additional attempts may be warranted: the Third Circuit noted NBME policy allows an examinee to "seek authorization from a state medical board for an exception from the [attempt] limit." Katz v. Nat'l Bd. of Med. Exam'rs, No. 17-1329, 2018 WL 4517601, at at *4 n.2 (3d Cir. Sept. 25, 2018) (acknowledging an NBME process for a state-sponsored fifth attempt).

113.    NBME cannot demonstrate that an absolute bar on further attempts after an arbitrary number is necessary to the examination's purpose.

114.    Allowing additional attempt in extraordinary cases does not fundamentally alter the exam's nature – especially since NBME's own policy contemplates additional attempt via state sponsorship.

115.    In fact, NBME's willingness to allow exceptions when requested by a state board undermines any claim that the four-attempt rule is sacrosanct for exam validity.

116.    Here, NBME had a sponsoring state board and a disabled candidate, yet it refused to bend its policy.

117.    This inflexible application of the rule, without necessity, is precisely the kind of bureaucratic barrier the ADA's anti-screen-out provision prohibits.

118.    In <u>Katz</u>, NBME justified its six-attempt cap as a reasonable measure to prevent unqualified candidates from passing "by chance", but that rationale loses force when an extra attempt is backed by a medical board and coupled with accommodations ensuring the exam measures ability, not luck. <u>See</u> <u>Katz</u>, 2018 WL 4517601, at 5 (accepting that the attempt limit aimed to ensure results reflect true aptitude, consistent with the ADA's "best ensure" standard). By maintaining and enforcing a policy that unnecessarily excludes Plaintiff due to her disability, NBME has denied her "full and equal" access to its examination service.

119.    Here, NBME not only refused accommodations but provided Plaintiff no opportunity to be heard at all, even after a state licensing board supported her request. Such a one-sided decision-making process – with no avenue for appeal or explanation – highlights the fundamental unfairness, and due process concerns, in NBME's actions." <u>See</u> <u>Ramsay</u>, 968 F.3d at 258-61 (affirming injunction where NBME's lack of deference to individualized proof of disability was deemed inconsistent with ADA requirements).

**<u>Failure to Modify Policy</u>**

120.    The ADA also requires public accommodations to make "reasonable modifications" to policies, practices, or procedures when necessary to avoid disability discrimination, unless doing so would fundamentally alter the nature of the goods or services. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302.

121.    In Plaintiff's case, NBME was obliged to reasonably modify its four-attempt policy to accommodate her disability.

122.    Granting one additional attempt (especially with the backing of a medical board and with accommodations) is a reasonable modification – it does not undermine the exam's integrity or impose undue burden. Many examinees take multiple attempts to pass USMLE steps; the difference here is simply one extra try beyond NBME's usual cutoff.

123.    This modification was necessary to afford Plaintiff an equal opportunity to demonstrate her competence.

124.    NBME's refusal to make this modification, even in the face of compelling evidence and a state board's request, constitutes a violation of § 12182(b)(2)(A)(ii).

125.    NBME cannot justify its conduct under any ADA defenses. Providing Plaintiff an accommodated fifth attempt would not fundamentally alter the USMLE or lower its standards – Plaintiff must still earn a passing score like any other candidate.

126.    Nor would it impose an undue hardship on NBME's operation; the USMLE is administered to tens of thousands of examinees annually, and adding a single examinee does not pose a logistical or financial burden of significance.

127.    Given that NBME already permits a fifth attempt when sponsored by a state board, it has implicitly conceded that an extra attempt is not incompatible with exam standards in appropriate cases.

128.    Plaintiff's case is an appropriate case, as evidenced by Georgia Board's sponsorship and the disability factors at play.

129.    Any generalized concerns NBME might cite (such as exam item exposure or fairness) are insufficient to overcome the ADA's requirement of individualized consideration.

**Harm Caused**

130.    As a direct result of NBME's ADA violations, Plaintiff has suffered and will continue to suffer irreparable harm.

131.    Plaintiff has been denied the opportunity to take critical professional examinations on equal footing with others, which in turn blocks her from obtaining her medical license and pursuing her profession.

132.    This loss of opportunity, along with the attendant career, financial, and emotional harms, is the precise kind of injury that the ADA's private right of action is meant to redress.

133.    Plaintiff has no adequate remedy at law for these injuries, as the primary relief she needs is access to the examination itself under nondiscriminatory conditions.

**Prayer for ADA Relief**

134.    Pursuant to 42 U.S.C. § 12188(a)(1), which incorporates the injunctive remedies of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3(a), Plaintiff is entitled to prospective injunctive relief requiring NBME to immediately cease its unlawful discriminatory practices and to provide Plaintiff full and equal access to the USMLE with reasonable accommodations.

135.    Plaintiff seeks a permanent injunction ordering NBME to:

(a) immediately permit Plaintiff to register for and sit for the USMLE Step 1 and Step 2 CK examinations, examinations she has never attempted and from which she has been categorically excluded;

(b) provide all reasonable, necessary, and appropriate testing accommodations required to ensure that Plaintiff's performance is measured accurately and not distorted by the effects of her disability, including but not limited to extended testing time and other accommodations recommended by her evaluating professionals; and

(c) refrain from retaliating against Plaintiff or imposing any additional eligibility restrictions, conditions, or barriers that would impede her access to the USMLE on the basis of disability or in response to this action.

136.    Plaintiff further seeks declaratory relief declaring that NBME's enforcement of its attempt-limit eligibility rule to permanently bar Plaintiff from taking USMLE Step 1 and Step 2 CK—based on failures of a now-discontinued examination taken while Plaintiff's disability was undiagnosed—constitutes unlawful disability discrimination in violation of the Americans with Disabilities Act.

137.    Pursuant to 42 U.S.C. 12205, Plaintiff also seeks an award of reasonable attorney fees, costs, and litigation expenses incurred in enforcing her federal rights.

## COUNT II
### Violation of Fourteenth Amendment (Procedural Due Process)

138.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

139.    Defendant NBME, in its role as the gatekeeper of the USMLE, is performing a public function intimately related to state medical licensing.

140.    All states, including Georgia and Pennsylvania, require passage of NBME's USMLE as a condition for medical licensure.

141.    NBME thus holds delegated authority over a critical step in state licensing.

142.    Moreover, NBME works in close coordination with state actors – it jointly owns the USMLE with the Federation of State Medical Boards, an organization composed of state licensing boards.

143.    NBME created and disseminated the petition process for state boards to sponsor additional attempts, explicitly involving state regulators in its decision-making.

144.    By inviting and then rejecting the Georgia Board's sponsorship of Plaintiff, NBME was entwined with the state's regulatory process.

145.    NBME's decision to deny Plaintiff an additional attempt, despite a state board's request, constitutes action under color of state law for purposes of 42 U.S.C. § 1983.

146.    NBME willfully participated in joint activity with the Georgia Board (a state agency) by considering the Board's petition, and then exercised decision-making power in a manner that effectively overrode the state's licensing judgment.

147.    The deprivation is thus fairly attributable to the state, making NBME subject to the constraints of the Fourteenth Amendment in this context.

**Protected Interest**

148.    Plaintiff has a constitutionally protected property and/or liberty interest in pursuing her chosen profession of medicine, which includes the right to a fair opportunity to seek medical licensure.

149.    Courts have recognized that once an individual has met substantial prerequisites (such as completing medical school), the opportunity to take licensing examinations and pursue licensure can implicate a legitimate property interest, particularly when a de facto monopoly exists over the licensing path.

150.    Here, Plaintiff's interest is underscored by the Georgia Board's action: the state board effectively endorsed her eligibility to continue the licensure process.

151.    This endorsement reflects a state-created interest in Plaintiff being allowed to proceed. NBME's subsequent denial of that opportunity deprived Plaintiff of her interest in a manner that triggers procedural due process protections.

152.    Additionally, Plaintiff has a liberty interest in following her chosen career and not being arbitrarily barred from the profession without due process of law.

**Deprivation Without Due Process**

153.    NBME, acting under color of state law, deprived Plaintiff of her interest in pursuing licensure without affording adequate procedural protections.

154.    NBME's petition process, the supposed safeguard for examinees who hit the attempt limit, was applied to Plaintiff in an arbitrary and opaque fashion.

155.    After the Georgia Board – an authoritative state body – petitioned on Plaintiff's behalf, Plaintiff reasonably expected that NBME would grant the exception or at least provide a reasoned basis for denial.

156.    Instead, NBME summarily refused, giving only a conclusory statement about "ineligibility" and no explanation addressing the Board's sponsorship or Plaintiff's individual circumstances.

157.    NBME provided Plaintiff no notice of any additional criteria that she failed to meet and no opportunity to be heard beyond the Board's submission.

158.    Plaintiff was not told that NBME was even considering denying the Board's request on particular grounds, nor was she given a forum to contest NBME's decision or present

additional evidence, such evidence of her newly diagnosed disability and how it affected her

exams, which would be directly relevant to any fair consideration of an exception.

159.    The decision was made unilaterally and finally by NBME with zero transparent

process.

**Arbitrary and Capricious Decision-Making**

160.    The manner in which NBME handled Plaintiff's case fails even a minimal

standard of fairness.

161.    NBME's own policy created an expectation that a state board's informed request

would result in an extra attempt being allowed.

162.    By deviating from that outcome without explanation, NBME acted arbitrarily. It

effectively nullified the state board's decision without any due process.

163.    This is analogous to, if not more egregious than, a state licensing board revoking

or denying a license without notice or hearing – conduct which plainly violates due process.

164.    NBME's decision was also irrational in that it ignored the very basis for the

Board's involvement—Plaintiff's disability and unique situation—suggesting that NBME did not

genuinely weigh relevant factors.

165.    In procedural due process terms, NBME failed to provide the "notice and

opportunity to respond" that is the essence of due process when taking an action that adjudicates

an individual's rights or privileges.

**No Adequate Remedy Within NBME**

166.    Plaintiff had no internal appeal or review mechanism available to challenge

NBME's denial. NBME's policies did not offer any formal appeal from an exception denial.

167.    The decision communicated to Plaintiff was effectively final.

168.    Thus, NBME chose to conclusively determine Plaintiff's professional fate in a one-sided process.

169.    The risk of erroneous deprivation of Plaintiff's rights under such a process is exceedingly high: NBME made a life-altering decision possibly based on misunderstanding or rigid adherence to a policy, without hearing Plaintiff's perspective or considering evidence of her disability's impact.

170.    Any fair process would have, at a minimum, allowed Plaintiff to submit additional information or have an independent decision-maker evaluate whether an exception was warranted—none was provided.

**State Involvement and Responsibility**

171.    To the extent NBME argues it is a private actor, Plaintiff reiterates that the Georgia Board's direct involvement, and NBME's rejection thereof,  brings this matter into the ambit of state action.

172.    The Board, having approved Plaintiff's petition, was effectively attempting to exercise its state authority to permit Plaintiff another step toward licensure.

173.    NBME's refusal undermined and nullified the Board's action.

174.    In doing so, NBME performed a function that is traditionally the state's: deciding who may continue in the medical licensure process.

175.    The state of Georgia, through its Board, was willing to allow Plaintiff to proceed; NBME acting contrary to that determination is tantamount to an administrative veto over a state decision.

176.    This interwoven activity demonstrates the close nexus between NBME's conduct and state involvement, confirming that due process constraints apply to NBME here.

**Injury**

177.     NBME's denial of procedural due process has caused Plaintiff significant harm.

178.     It has effectively blacklisted her from the medical profession without a fair chance to be heard.

179.     The lack of process also meant that NBME likely did not consider important evidence (like Plaintiff's disability diagnosis) that could have altered the outcome, thus leading to an unjust result.

180.     This undue deprivation of Plaintiff's opportunity to pursue licensure is ongoing and will be permanent absent court intervention.

**Relief Sought (Due Process)**

181.     Plaintiff seeks relief under 42 U.S.C. § 1983 for Defendant NBME's violation of her rights under the Fourteenth Amendment to the United States Constitution.

182.     Plaintiff requests declaratory relief declaring that NBME's refusal to provide a meaningful exception process—and its summary rejection of a state medical board–sponsored eligibility petition—deprived Plaintiff of procedural due process.

183.     Plaintiff further seeks injunctive relief restoring her eligibility to sit for the USMLE Step 1 and Step 2 CK.

184.     Such relief would require NBME either to honor the Georgia Composite Medical Board's sponsorship or, at minimum, to afford Plaintiff a fair and constitutionally adequate opportunity—upon proper notice and a meaningful hearing—to have her eligibility determined under clear, objective, and consistently applied criteria.

185.     Where, as here, a duly authorized state medical board has affirmatively endorsed Plaintiff's eligibility, and NBME has denied that endorsement without transparent standards or

procedural safeguards, the appropriate and narrowly tailored remedy is an order requiring NBME to permit Plaintiff to take USMLE Step 1 and Step 2 CK without further delay.

186.    Plaintiff also seeks recovery of her reasonable attorney's fees and costs incurred in enforcing her constitutional rights pursuant to 42 U.S.C. § 1988(b).

## COUNT III
### Violation of Common Law Duty of Fundamental Fairness

187.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

188.    Defendant NBME, as the nationwide gatekeeper for medical licensure exams, performs a crucial public function and wields quasi-governmental authority.

189.    In this role, NBME is obligated under the common law to conduct its decision-making in a manner that is fundamentally fair, non-arbitrary, and in good faith toward those who rely on its examinations.

190.    By denying Plaintiff's requested testing accommodations without any reasonable basis, fair process, or meaningful explanation, NBME engaged in arbitrary and capricious conduct that violated the common law duty of due process and fair dealing owed to Plaintiff.

191.    NBME abused its quasi-public power by acting irrationally and without the basic fairness required of an entity entrusted with a public licensing function.

192.    NBME's actions – undertaken with no adequate notice, no opportunity for Plaintiff to be meaningfully heard, and in disregard of its own stated procedures – were fundamentally unfair.

193.    This abuse of its gatekeeping power and breach of public trust caused significant harm to Plaintiff's professional aspirations.

194.    Accordingly, NBME's arbitrary and capricious conduct constitutes a violation of the common law duty of fundamental fairness, entitling Plaintiff to relief as determined by this Court, including injunctive and equitable relief to remedy NBME's unfair practices.

## COUNT IV
## Promissory Estoppel

195.    NBME, through its published policies and direct communications, made clear and definite representations to test-takers, including Plaintiff, that it would provide a fair examination process and consider requests for disability accommodations in accordance with the ADA and its own guidelines.

196.    NBME knew or should have known that these assurances would induce qualified individuals with disabilities to register for its exam and rely on receiving necessary accommodations.

197.    Relying on NBME's promises of a fundamentally fair testing process, Plaintiff took multiple significant actions to his detriment.

198.    Plaintiff paid NBME's exam fees, prepared for the examination, submitted extensive medical documentation to NBME, and sat for the exam under standard conditions – all in the reasonable expectation that NBME would act in good faith and grant appropriate accommodations.

199.    NBME's unjustified refusal to grant Plaintiff's accommodation request betrayed the promises it made and left Plaintiff in a worse position having expended time, money, and an exam attempt than if NBME had been upfront about its intentions.

200.    Under the doctrine of promissory estoppel, NBME should be estoped from denying reasonable accommodations or from denying the fundamentally fair treatment it

promised, and Plaintiff is entitled to relief, including appropriate accommodations or a chance to re-take the exam fairly, and damages as available.

201.    Additionally, Defendant NBME maintained and published policies permitting examinees up to six (6) lifetime attempts to sit for the relevant examination.

202.    Plaintiff relied on these policies in planning her medical education, examination strategy, and professional pathway.

203.    Prior to exhausting the originally permitted six attempts, Plaintiff sat for the examination four (4) times, with the reasonable expectation—based on NBME's published rules and representations—that she would remain eligible for additional attempts.

204.    During the COVID-19 pandemic, NBME suspended or significantly limited examination administration.

205.    As a result, Plaintiff was prevented from registering for a fifth attempt during a period when such an attempt was still permitted under NBME's then-existing policy.

206.    During this suspension period, Plaintiff received communications from NBME advising examinees to wait until testing resumed, reinforcing the reasonable expectation that eligibility rules would remain consistent once testing became available again.

207.    After testing resumed, NBME unilaterally changed its policy, reducing the maximum number of permitted attempts from six (6) to four (4), and applied this new limitation retroactively to Plaintiff—despite her having relied on the prior policy and having been prevented from testing during the COVID suspension.

208.    NBME's retroactive application of the revised attempt limit effectively barred Plaintiff from further examination attempts, not because of any change in her qualifications or

conduct, but solely because NBME altered the rules after Plaintiff had already acted in reliance on the prior policy.

209.    Plaintiff reasonably relied on NBME's representations, policies, and instructions to her detriment by delaying additional examination attempts during the COVID testing pause, expending time and resources preparing for future eligibility, and foregoing alternative professional paths based on the expectation that additional attempts would remain available.

210.    NBME knew or should have known that examinees would reasonably rely on its published attempt limits and its communications regarding testing delays, and that retroactively changing those rules would substantially prejudice individuals situated like Plaintiff.

211.    NBME's conduct constitutes fundamentally unfair "rule-changing during the game," undermining settled expectations and imposing severe professional consequences on Plaintiff through no fault of her own.

212.    Injustice can only be avoided by enforcing NBME's prior representations and holding NBME accountable for the reliance it induced.

213.    Under the doctrine of promissory estoppel, NBME should be estopped from applying the revised four-attempt limit retroactively to Plaintiff and should be required to provide equitable relief.

## VI.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

a)  Declaratory Relief: A judgment declaring that Defendant NBME's actions, policies, and practices as applied to Plaintiff – including the enforcement of the four-attempt limit and the denial of an exception despite a state board petition – violate Title III of the ADA and the procedural due process guarantees of the Fourteenth Amendment.

b) Injunctive Relief: Preliminary and permanent injunctions requiring NBME, its officers, agents, employees, and all persons acting in concert with it, to: (1) immediately designate Plaintiff as eligible to register for the USMLE Step 1 and Step 2 CK exams; (2) afford Plaintiff any and all reasonable accommodations necessary for her disability when she takes these exams (including but not limited to extended time for spoken or written responses, as recommended by her diagnosing professionals); (3) accept the Georgia Composite Medical Board's sponsorship/petition on Plaintiff's behalf and thereby allow her a fifth attempt at the relevant Steps, in accordance with NBME's exception policy; and (4) refrain from imposing or enforcing any eligibility criteria that screen out Plaintiff due to her disability or that are not strictly necessary for the purpose of the exam, in compliance with the ADA.

c) In the alternative (or additionally), an order directing NBME to establish a fair process for considering Plaintiff's eligibility, which meets the requirements of due process – including providing Plaintiff notice of any issues and an opportunity to be heard – and thereafter to allow her to test if she meets the criteria under a nondiscriminatory application of NBME's rules.

d) Attorney's Fees and Costs: An award of Plaintiff's reasonable attorney's fees, costs, and litigation expenses incurred in this action, as provided by law (including 42 U.S.C. § 12205 and 42 U.S.C. § 1988).

e)  Other Relief: Such other and further relief as the Court deems just and proper, including oversight as necessary to ensure NBME's compliance with the Court's

orders and any further relief to fully restore Plaintiff's opportunity to pursue medical licensure.

Respectfully submitted,

**Attia Law Firm, LLC**

Dated: January 22, 2026

*Adam Alaa Attia*

By: Adam A. Attia, Esquire
PA ID: 326378
145 Greenwood Ave, Ste 400
Wyncote, PA 19095
adam@attialawfirm.com
(610)627-5282