**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **OLUBUNMI OBAYEMI** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 26-435** |
| | : | |
| **NATIONAL BOARD OF MEDICAL EXAMINERS** | : | |
| | : | |

**McHUGH, J.** **May 4, 2026**

## MEMORANDUM

An aspiring physician seeks a medical license, but she has been unable to pass the three-part exam sequence administered by Defendant National Board of Medical Examiners (NBME) to get it. She claims discrimination based on disability, but there is a fundamental defect in those claims—she never requested any accommodation, and the federal regulations cited do not fit the facts of the case. Plaintiff's principal complaint is that NBME treated her unfairly in the application of various policies that govern the certification process, and that she relied upon representations it made to her detriment. But the legal theories advanced are tenuous at best, and as with the disability claims, the facts pleaded do not support recovery.

Having previously defeated a request for injunctive relief, NBME now moves to dismiss. Because I conclude that Plaintiff has not stated any plausible claims, the motion will be granted.

### I. Facts as Pled[1]

Plaintiff Olubunmi Obayemi, a Texas resident, graduated from medical school on the island nation of St. Kitts and Nevis. Am. Compl., ¶¶ 5–6, ECF 15. Since childhood, she has

[1] After filing an initial complaint, Plaintiff moved for a preliminary injunction in February 2026, seeking to compel NBME to let her take the Step 1 and Step 2 CK exams of the United States Medical Licensing Examination during the pendency of this action. I denied the motion, concluding that she failed to meet the legal standard set forth in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), to attain preliminary injunctive relief. Preliminary Injunction Ord., ECF 13. Shortly thereafter, Plaintiff filed an amended

struggled with speech and language challenges such as severe stuttering and fluency impairment that affect her ability to communicate in high-pressure evaluative settings. *Id.* ¶¶ 10, 13. A speech-language pathologist formally diagnosed her with childhood onset fluency disorder in August 2024. *Id.* ¶¶ 11, 20; Aug. 2024 Rep., ECF 15-3. And during the pendency of this action, a different pathologist evaluated Plaintiff and diagnosed her with that same disorder as well as with moderate mixed receptive-expressive language disorder. Am. Compl. ¶ 12; Feb. 2026 Rep., ECF 15-4. These disabilities cause Plaintiff to stutter and present disfluency, which worsen under stress; affect her ability to quickly communicate with others; and impair her capacity to efficiently process information during timed exams. Am. Compl. ¶¶ 15–17. Plaintiff alleges these symptoms were present but undiagnosed during her failed attempts to pass the United States Medical Licensing Examination (USMLE) in pursuit of medical licensure in the United States. *Id.* ¶ 18.

The USMLE, which NBME co-owns and administers,[2] is a three-step exam sequence that an individual must pass to become a licensed allopathic physician in the United States. *Id.* ¶¶ 21–23. The USMLE previously included a Step 2 Clinical Skills (Step 2 CS) assessment, which required examinees to gather information from patients, perform physical exams, and verbally communicate the examinees' diagnostic findings. *Id.* ¶¶ 23–26, 38. NBME suspended the Step 2 CS assessment for 18 months during the COVID-19 pandemic due to public health concerns and then discontinued its use in 2021. *Id.* ¶¶ 26, 28.

---

complaint, ECF 15, which is the subject of this motion. And most recently, Plaintiff filed a renewed motion for a preliminary injunction, ECF 21, raising similar issues that I address in this memorandum opinion.

[2] NBME co-owns the USMLE with the Federation of State Medical Boards of the United States, Inc., a non-profit organization that represents state medical boards nationwide, which is not a party in this action.

Without ever requesting an accommodation, Plaintiff took and failed the Step 2 CS assessment four times between 2014 and 2018. *Id.* ¶¶ 36–37. During that period, NBME permitted examinees up to six attempts at a Step or Step Component. *Id.* ¶ 32–33; *see* Mot. to Dismiss, Bulletins of Information, ECF 17-3 to 17-6.[3] NBME communicated its policies, including the attempt limit, to prospective applicants through the annual USMLE Bulletin of Information (Bulletin), which applied to the exam year in which it was issued. Am. Compl. ¶ 29; ECF 17-3 to 17-6. The 2014 Bulletin advised applicants, in relevant part, as follows:

> Note: You must become familiar with the information in this *Bulletin* if you are an applicant with an eligibility period in 2014. If your eligibility period extends into 2015 and you test in 2015, you must become familiar with and will be subject to the policies and procedures detailed in the 2015 *Bulletin of Information*.

ECF 17-3 at 4 (2014 Bulletin). The 2014 Bulletin further advised that "[i]f changes in the USMLE program occur after the release of this *Bulletin*, they will be effective when posted on the USMLE website." *Id.* In addition, the 2014 Bulletin informed candidates about the six-attempt limit in force at the time:

> The USMLE Program limits the total number of times an examinee can take the same Step or Step Component. An examinee is ineligible to take a Step or Step Component if the examinee has made six or more prior attempts to pass that Step or Step Component, including incomplete attempts. All attempts at a Step or Step Component are counted toward the limit, regardless of when the exams were taken.

[3] Where, as here, the plaintiff bases her claims on "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss," the court can consider it at this screening stage. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993). Here, Plaintiff challenges NBME's testing eligibility policy, *see, e.g.*, Am. Compl. ¶¶ 29–34, which is found within the Bulletins of Information attached to NBME's motion to dismiss, so I can properly consider those documents under Rule 12(b)(6). Moreover, to the extent Plaintiff's "own exhibits contradict her allegations in the complaint, the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).

*Id.* at 9. The Bulletins issued during Plaintiff's final three attempts at the Step 2 CS assessment in 2016, 2017, and 2018, respectively, included nearly identical language as the 2014 Bulletin; their dates were updated to reflect their applicability to that specific exam year. *See* ECF 17-4 at 4-5, 13 (2016 Bulletin); ECF 17-5 at 4-5, 13 (2017 Bulletin); ECF 17-6 at 4-5, 13 (2018 Bulletin).

In 2021, three years after Plaintiff's last attempt at the Step 2 CS exam, she failed the Step 1 exam.[4] Am. Compl. ¶ 35. The Bulletin issued for that exam year similarly informed prospective candidates about their responsibility to review the information therein, the policies' applicability to candidates participating in that year's exam cycle, and the six-attempt limit. *See* ECF 17-7 at 5, 7, 17 (2021 Bulletin). Importantly, however, the 2021 Bulletin advised applicants about policy changes that would impact USMLE eligibility, and the information contained in that Bulletin:

**SPECIAL NOTES FOR 2021**

> UPCOMING POLICY CHANGES
>
> This *Bulletin* reflects information and requirements available at the time of publication (September 30, 2020). As announced on February 12, 2020, the USMLE program will be implementing several policy changes that will impact USMLE eligibility and the information contained in this *Bulletin*. Firm implementation dates for these policy changes have not yet been announced. Therefore, it is your responsibility to monitor the Announcements page on the USMLE website for the most up-to-date information regarding the implementation of these policy changes as it may impact your ability to take or apply for a USMLE Step.
>
> The changes include:
>
> . . .
>
> - Reducing the allowable number of exam attempts on each Step or Step Component from six to four

[4] Step 1 is a computer-based, multiple-choice exam that "assesses the examinee's understanding of and ability to apply important concepts of the basic sciences to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy." 2021 Bulletin, ECF 17-7 at 14.

> . . .
>
> **Step 2 Clinical Skills (CS)**
>
> Given the examination format of Step 2 CS, which required close proximity of examinees to standardized patients, as well as in many cases, domestic and international examinee travel, *the USMLE program has suspended the Step 2 CS examination until at least June 2021*. The primary reason for this suspension is aimed at protecting the health of examinees as well as test center staff. It is your responsibility to review the Announcements page for the most up-to-date information regarding the status of [the CS] assessment in USMLE.

*Id.* at 6 (emphasis added); *see also* Am. Compl. ¶¶ 26, 28, 43.

The new four-attempt policy mentioned in the 2021 Bulletin took effect in mid-2021 and applied retroactively to all previous Step applications, rendering candidates like Plaintiff who took and failed the Step 2 CS exam four times ineligible to take any other Step exams. Am. Compl. ¶¶ 29–34. According to Plaintiff, this policy change had a "drastic" effect on her, terminating her eligibility to become a licensed allopathic physician in the United States. *Id.* ¶¶ 45–46. Plaintiff alleges that she received notice "when attempting to register for another exam that she could not proceed because of the four-attempt rule." *Id.* ¶ 47. NBME also cancelled her Step 2 Clinical Knowledge (CK) exam[5] registration. *Id.* ¶ 50.

Two years later, NBME released an annual report providing state medical boards with an overview of the USMLE program. *See* 2023 Ann. Rep., ECF 15-7 at 5. In that report, NBME explained a narrow exception to the four-attempt limit, which "includes a provision to allow examinees who have four or more attempts *at a Step* to have a single additional attempt if requested by a state medical board that is fully informed of the individual's prior examination history." *Id.*

---

[5] Step 2 CK is a computer-based, multiple-choice exam that "assesses an examinee's ability to apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision, with an emphasis on health promotion and disease prevention." 2021 Bulletin at 14.

at 10 (emphasis added). In addition to describing the steps to petition for that exception, the report further explained that NBME "will accept a request from a medical licensing authority to allow one additional attempt for an individual who would be eligible to become licensed in that jurisdiction if they passed *that Step* after more than four attempts and go on to meet all other licensure requirements." *Id.* (emphasis added).

Plaintiff followed that petition process, and on June 6, 2024, the Georgia Composite Medical Board petitioned on her behalf for an exception to take the Step 1 and Step 2 CK exams. Am. Compl. ¶¶ 55–60; State Med. Bd. Petition, ECF 15-9. NBME summarily denied the petition four days later, Am. Compl. ¶ 61, and in subsequent email correspondence, an official from the USMLE Secretariat's Office explained to Plaintiff's counsel that, "per USMLE policy, we are unable to remove any USMLE history from an examinee's record. As previously communicated, examinees who have attempted Step 2 CS four or more times without passing are ineligible to apply for any further USMLE Steps," July 23, 2025 Email to Plaintiff's Counsel, ECF 15-14 at 6–7; *see* Am. Compl. ¶¶ 62–65, 69–73 (alleging, among other things, that NBME refused to consider Plaintiff's disability documentation and asserted that she was "categorically ineligible").

Based on these events, Plaintiff claims NBME violated the Americans with Disabilities Act (ADA) in two ways: first, by denying her access to the Step 1 and Step 2 CK exams when it refused to restore her testing eligibility based on the four-attempt policy; and second, by summarily rejecting her state-sponsored petition to invoke the policy's exception without considering her disability documentation. Am. Compl. ¶¶ 102–21. In addition, Plaintiff (1) seeks a declaration that NBME's alleged conduct violated the ADA, 42 U.S.C. § 12189, and its implementing regulation, 28 C.F.R. § 36.309, *id.* ¶¶ 124; (2) claims NBME violated "the common law duty of fundamental fairness," *id.* ¶¶ 132–39; and (3) urges the Court to enforce NBME's alleged

"promise" that she had "up to six lifetime attempts" to take a Step exam via the doctrine of promissory estoppel, *id.* ¶¶ 140–49.

## I. Standard of Review

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## II. Discussion

### A. Plaintiff has not stated an ADA claim.

In Count I, Plaintiff alleges NBME denied her access to the Step 1 and Step 2 CK exams "by refusing to restore [her] testing eligibility" and "by refusing to provide an alternative accessible arrangement" to allow her to sit for future exams with accommodations. Am. Compl. ¶ 107.

As I stated in my order denying Plaintiff's first motion for a preliminary injunction, "the applicable provision, 42 U.S.C. § 12189, requires private entities like [NBME] to offer accommodations concerning the 'place and manner' of the professional licensing exams they administer to individuals with disabilities." Preliminary Injunction Ord., ECF 13 at 1–2; *see Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 155, 157 (3d Cir. 1999) (concluding that section 12189 defines Title III's requirements in the context of examinations); *see* 28 C.F.R. § 36.309(a) ("Any private entity that offers examinations . . . related to . . . licensing . . . for . . . professional . . . purposes shall offer such examinations . . . in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."). This section's purpose is "to assure that persons with disabilities are not foreclosed from educational, professional or trade opportunities because an examination or course is conducted in an

*inaccessible site or without an accommodation*." H.R. Rep. No. 101–485(III), at 68–69 (1990) (emphasis added).

Covered testing entities, like NBME, comply with their statutory obligation by adhering to the provisions set forth in section 12189's implementing regulation, 28 C.F.R. § 36.309(b). Plaintiff relies on 28 C.F.R. § 36.309(b)(1)(i) to support her ADA claims, but like section 12189, this regulation "refers to providing reasonable accommodations related to the examination's administration," Preliminary Injunction Ord. at 2 n.3, and "does not mandate that the NBME provide examinations to the disabled that yield technically equal results," *Doe*, 199 F.3d at 156. Indeed, the "alternative accessible arrangements" mentioned in section 12189 "mandate[] changes to examinations . . . so that disabled people who are disadvantaged by certain features of standardized examinations may take the examinations without those features that disadvantage them." *Id.* at 156; *see Zangara v. Nat'l Bd. of Med. Exam'rs*, No. 23-3928, 2024 WL 4041759, at *5 (E.D. Pa. Sept. 4, 2024) (Murphy, J.), *aff'd*, No. 24-2664, 2025 WL 1218188 (3d Cir. Apr. 28, 2025) ("Section 309 mandates accessibility, which entails the removal of discriminatory 'features' of the exams. . . . [I]t allows for qualified individuals to receive reasonable accommodations."); *see, e.g., Kitchens v. U.S. Med. Licensing Examination*, No. 22-3301, 2023 WL 7230400, at *17 (E.D. Pa. Oct. 31, 2023) (refusing the plaintiff's request to expunge his USMLE scores because doing so "would not ensure the accessibility of the underlying examinations because [the plaintiff] already took them and already experienced any alleged inaccessibility.").

Here, Plaintiff's reading of section 12189 and the corresponding regulation stretches their meaning too far. Contrary to her position, the state-board-sponsored exception to NBME's four-attempt limit is not an "alternative accessible arrangement" under Title III; rather, it is a narrow exception to an eligibility policy that has no bearing on the exam's administration, selection, or

presentation. *See* 28 C.F.R. § 36.309(b)(4) ("Alternative accessible arrangements may include, for example, provision of an examination at an individual's home with a proctor if accessible facilities or equipment are unavailable."). Again, the provisions under which Plaintiff seeks relief govern the "place and manner" of licensing exams and require private testing companies like NBME to provide reasonable accommodations to individuals with disabilities to ensure the exam for which they are eligible to take is accessible within the meaning of Title III. *See Doe*, 199 F.3d at 156 ("The notion of accessibility, or best ensuring that examination results accurately reflect 'aptitude or achievement level,' *see* 28 C.F.R. § 36.309(b)(1)(i), does not mandate that the NBME provide examinations to the disabled that yield technically equal results."); *see Zangara*, 2024 WL 4041759, at *3 ("The requirement that the NBME must offer exams 'in a place and manner accessible' to individuals with disabilities, and that it 'best ensure' that the tests reflect an individual's 'aptitude or achievement level,' is generally met by offering qualified individuals reasonable accommodations."); *see also Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 253–54 (3d Cir. 2020).

Conspicuously absent from the complaint are any allegations that Plaintiff ever sought, and NBME denied, reasonable accommodations or that NBME administered its Step exams to her in a way that violated section 12189's "place and manner" requirements. *See, e.g.*, *Zangara*, 2024 WL 4041759, at *4 (denying the plaintiff's request to change NBME's scoring methodologies because the relief available under Title III "requires removal of certain testing 'features' that disadvantage students with disabilities" and the plaintiff "[did] not wish to partake in this process by requesting reasonable accommodations."); *see also Kitchens*, 2023 WL 7230400, at *1, 17–18 (denying the plaintiff's request to expunge his past USMLE scores but granting his request for accommodations on future tests). Without such allegations, she cannot bring a cognizable claim

and Count I must be dismissed. This is unfortunate, as Plaintiff is clearly determined to succeed and pleads that she passed "comparable" exams in Canada and the United Kingdom with the help of accommodations, Am. Compl. ¶ 75, but a court is limited by the factual record before it.

Turning to Count II, Plaintiff alleges that NBME's attempt limit and petition process "function as eligibility criteria," *id.* ¶ 113, and its refusal to consider her disability documentation unlawfully "screened her" out of the USMLE program based on her disabilities, *id.* ¶ 119. Although Plaintiff claims this alleged conduct violates section 12189, her complaint's repeated references to "eligibility criteria" that "screened" her out of the USMLE program based on her disabilities actually invoke 42 U.S.C. § 12182. *See id.* ¶¶ 113–14, 118–20. To be clear, section 12182, not section 12189, prohibits "the imposition or application of *eligibility criteria that screen out or tend to screen out* an individual with a disability." 42 U.S.C. § 12182(2)(A)(i). But, as I previously explained when I denied Plaintiff's first preliminary injunction motion, this section does not apply to NBME, a private entity offering licensing exams, which does not come within Title III's definition of a "place of public accommodation." *Id.* § 12181(7) (listing private entities considered public accommodations under Title III); 28 C.F.R. § 36.301(a) ("A public accommodation shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability . . . ."); Preliminary Injunction Ord. at 1. Therefore, because Plaintiff cannot seek relief against NBME under this section, Count II is also dismissed.[6]

[6] In Count III, Plaintiff seeks a declaration that NBME's alleged conduct violated the ADA. Am. Compl. ¶¶ 122–24. This request for declaratory relief duplicates her substantive ADA claims in Counts I and II. Because this declaratory judgment claim implicates the same issues and would result in the same relief as her ADA claims, I will exercise my discretion at this stage to dismiss it as duplicative. *See Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 233 (E.D. Pa. 2019) ("Courts generally decline granting declaratory relief when the claim for declaratory judgment is entirely duplicative of another claim in the cause of action."); *Chaleplis v. Karloutsos*, 579 F. Supp. 3d 685, 706 n.3 (E.D. Pa. 2022) ("[I]f a party seeks declaratory relief

**B. Plaintiff has not stated a claim for violation of the "common law duty of fundamental fairness."**

In Count V, Plaintiff alleges that NBME violated the "common law duty of fundamental fairness" by summarily rejecting her state-sponsored exception petition to take the Step 1 and Step 2 CK exams. Am. Compl. ¶ 139. She contends that NBME enjoys a monopoly over medical licensure in the United States and therefore, as a "quasi-regulatory authority,"[7] must exercise that gatekeeping power in line with common law fairness, due process, and good faith and fair dealing principles. Opp. Br. at 26–27; Pl.'s Sur-Reply at 5–6, ECF 20. Plaintiff does not clarify whether she seeks to invoke federal or state law, or both; in any event, under either, her claim fails.

As an initial matter, it is axiomatic that there is "no federal general common law." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Rather, only "limited areas exist in which federal judges may appropriately craft the rule of decision." *Rodriguez v. Fed. Deposit Ins. Corp.*, 589 U.S. 132, 136 (2020). As the Third Circuit recently explained, "[w]hen deciding whether to craft federal common law, 'one of the most basic' conditions is that the rule is 'necessary to protect

---

that is redundant with claims already presented, courts may dismiss the claim which seeks declaratory relief for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") (citation omitted)).

In Count IV, Plaintiff pleads injunctive relief as a standalone claim, Am. Compl. ¶¶ 125–31, which is improper because an injunction is a remedy and not a cause of action, *see Birdman v. Off. of the Governor*, 677 F.3d 167, 172 (3d Cir. 2012) (stating that a party "must have a cause of action to merit an injunction"); *e.g.*, *Jones v. GEICO Choice Ins. Co.*, 617 F. Supp. 3d 275, 287 (E.D. Pa. 2022) ("[T]he count for injunctive relief must also be dismissed because injunctive relief is a remedy, not an independent cause of action."). Plaintiff correctly recognizes this in her response, Opp. Br., ECF 18 at 21; so, I will also dismiss that count.

[7] Although NBME is not a state actor, *see Thomas v. NBME-Nat'l Bd. of Med. Exam'rs*, No. 13-3946, 2015 WL 667077, at *4 (E.D. Pa. Feb. 13, 2015), that fact "does not doom Plaintiff's common law due process claim because . . . the common law due process cause of action has no state action requirement.'" *Tulp v. Educ. Comm'n for Foreign Med. Graduates*, 376 F. Supp. 3d 531, 542 n.6 (E.D. Pa. 2019) (quoting *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 535 (3d Cir. 1994) (Becker, J., concurring in judgment)).

uniquely federal interests.'" *Matrix Distributors, Inc. v. Nat'l Ass'n of Boards of Pharmacy*, 34 F.4th 190, 197 (3d Cir. 2022) (quoting *Rodriguez*, 589 U.S. at 136). In *Matrix*, the Third Circuit discussed how some circuit courts of appeals have recognized a federal common law due process right in the specific context of "challenges to a higher education accreditation decision by an accrediting agency." *Id.* (collecting cases). And for good reason, because "several federal hooks," such as federal involvement in approving accrediting agencies, tethering Title IV funding to accreditation, and granting federal courts' exclusive jurisdiction over challenges to a federally approved agency's accreditation decision, justified creating federal common law in that context. *See id.*

The same cannot be said here. Plaintiff's complaint does not allege any uniquely federal interests in the medical licensure process, which is a "state controlled method of authorizing and regulating the practice of [the medical] profession . . . which involves the establishment of minimum state mandated standards." *Goussis v. Kimball*, 813 F. Supp. 352, 358 (E.D. Pa. 1993); *see* 2023 Ann. Rep. at 7 ("The results of the USMLE are reported to medical licensing authorities for use in the decision . . . to grant an initial license for the independent practice of medicine."). She points to no federal involvement in the traditionally state-regulated medical licensure process or the USMLE program itself, whose co-owners are two private, non-profit companies that offer and administer standardized tests for medical professionals. *See Matrix*, 34 F.4th at 198 ("There is no allegation, for example, that the federal government participates in approving accrediting agencies like NABP, or that VAWD accreditation is required for PriMed and Oak Drugs to receive federal funding."). Moreover, there is no allegation that, like college accreditation, NBME receives federal funds to carry out its USMLE program or to establish eligibility rules for its standardized tests. *See also Alston v. Nat'l Conf. of Bar Exam'rs*, 314 F. Supp. 3d 620, 625 (E.D.

Pa. 2018) ("NCBE is a private, non-profit corporation, which receives no public funding."). Here, unlike the university accreditation cases, no uniquely federal interests exist "that would justify expanding federal common law to govern" NBME's medical licensure exam sequence or its testing eligibility policies. *See Matrix*, 34 F.4th at 197.

Next up is state common law, under which Plaintiff's claim fares no better. Plaintiff contends that the Circuit's discussion in *Matrix* of *Falcone v. Middlesex Cnty. Med. Soc.*, 170 A.2d 791 (N.J. 1961), a New Jersey Supreme Court decision from more than sixty years ago, endorsed a "quasi-public gatekeeping doctrine" that binds courts within the Third Circuit. *See* Pl.'s Sur-Reply at 5. I disagree. In addressing New Jersey common law, the Third Circuit explained that "[i]n a handful of cases, the New Jersey Supreme Court has recognized a right to judicial review when quasi-public associations have improperly excluded or expelled members." *Matrix*, 34 F.4th at 198. And in discussing *Falcone* specifically, the court noted there were case-related reasons that compelled the New Jersey Supreme Court "to step in to limit the [county medical] society's 'unbridled' power to exclude a doctor from a profession based on arbitrary criteria." *Id.* A decision from the New Jersey Supreme Court has no relevance to Pennsylvania common law, and the Court of Appeals's fact-specific decision cannot reasonably be construed as adopting "the *Falcone* principle" as the general law of this Circuit. *See* Pl.'s Sur-Reply at 5.

Tellingly, Plaintiff does not cite, and this Court's research did not uncover, any precedential decisions recognizing a private entity's general duty of due process or fundamental fairness under Pennsylvania law. Rather, Pennsylvania courts have identified a narrow obligation in disciplinary proceedings at private universities. *See Tulp v. Educ. Comm'n for Foreign Med. Graduates*, 376 F. Supp. 3d 531, 542 (E.D. Pa. 2019) ("Pennsylvania law recognizes that, in disciplinary proceedings, certain private organizations owe a limited common law duty of due

process to those subject to disciplinary action."); *see, e.g.*, *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*, 309 A.2d 353 (Pa. 1973); *Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755 (Pa. Super. Ct. 1991); *Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575 (Pa. Super. Ct. 1990).

Moreover, the fact that state medical boards rely on the USMLE to assess prospective physicians' readiness for practice does not turn NBME into a "quasi-regulatory authority." There are no allegations that NBME executes traditional public functions like certifying medical school graduates to pursue post-graduate training, licensing physicians, or regulating the profession's conduct in any way. Rather, Plaintiff's allegations indicate that NBME's role in medical licensure involves only "the preparation, administration, and grading" of a standardized exam sequence that state medical boards elect to use in their respective evaluative processes. *See Goussis*, 813 F. Supp. at 358; *see Boggi v. Med. Rev. & Accrediting Council*, No. 08-4941, 2009 WL 2951022, at *6 (E.D. Pa. Sept. 15, 2009) ("At most, NBME and MRAC are companies with which certain states deal in the realm of medical licensing."); *see also* 2023 Ann. Rep. at 7.

It also bears mention that NBME's summary rejection of Plaintiff's exception petition was neither arbitrary nor capricious because she did not qualify for the exception. *See* Am. Compl. ¶ 139; Opp. Br. at 27. Rather, the exception applies to examinees "who have four or more attempts at a Step to have a single additional attempt" at that specific exam. 2023 Ann. Rep. at 10. Plaintiff took the Step 1 exam only once, in 2021, which she failed; therefore, with only one prior attempt, she could not invoke the exception to try again. Am. Compl. ¶ 35. Similarly, Plaintiff could not invoke the exception to take the Step 2 CK exam (as distinguished from the discontinued Step 2 CS exam) because she never took that test before. When the four-attempt limit took effect, NBME cancelled her Step 2 CK exam registration. *Id.* ¶ 47. So, without having taken and failed the Step

1 or Step 2 CK exams before the policy change, Plaintiff fell outside the exception's scope as to both tests, and NBME was well within its discretion to deny her petition on that basis.

**C. Plaintiff has not stated a claim for promissory estoppel.**

In Count VI, Plaintiff also seeks equitable relief based on one alleged "promise" by NBME.[8] She alleges that "through its published policies, official communications, and established practices," NBME represented to her that "examinees would be permitted up to six lifetime attempts to take the relevant examination." Am. Compl. ¶ 141. Plaintiff repeats this position in her briefing, but the record belies it. *See* Opp. Br. at 25 ("examinees would be permitted up to six attempts per Step examination"); Pl.'s Sur-Reply at 3 ("The promissory estoppel claim rests on sub-claim (c): NBME's repeated, published representation across every governing Bulletin of Information from 2014 through 2018 that examinees would be permitted up to six attempts per Step examination.").

Under Pennsylvania law, courts can enforce otherwise unenforceable agreements to avoid injustice between the parties through the equitable doctrine of promissory estoppel, *i.e.*, detrimental reliance. *See Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 238 (Pa. Commw. Ct. 2017) ("Promissory estoppel provides an equitable remedy to enforce a contract-like promise that would be otherwise unenforceable under contract law principles."). A successful claim requires showing that: "(1) the promisor acted in a manner that he or she should have reasonably expected to induce the other party into taking (or not taking) certain action; (2) the aggrieved party actually took such action; and (3) an injustice would result if the assurance that

[8] Plaintiff seems to have abandoned her reliance on two other "promises" alleged in the complaint, so I will not address them. Pl.'s Sur-Reply at 3 ("Plaintiff does not contest that those two sub-claims [Am. Compl. ¶ 141 (a)–(b)] warrant no further argument. The promissory estoppel claim rests on sub-claim (c) . . . .").

induced the action was not enforced." *Commonwealth v. Cosby*, 252 A.3d 1092, 1133 (Pa. 2021). Courts strictly enforce these factors to avoid loosely applying the doctrine. *See Cornell*, 167 A.3d at 238 ("These factors are strictly enforced to guard against the 'loose application' of promissory estoppel.") (quoting *Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Commw. Ct. 2009)).

Plaintiff's claim founders at the first step. The Bulletins on which she claims to have detrimentally relied between 2014 and 2018 did not promise her up to six attempts at a Step exam in perpetuity. Rather, those annual publications were exam-year-specific and expressly advised prospective candidates, including Plaintiff, that the policies and procedures in each Bulletin were subject to change each year. Am. Compl. ¶ 29; *e.g.*, 2014 Bulletin at 4 ("If your eligibility period extends into 2015 and you test in 2015, you must become familiar with and will be subject to the policies and procedures detailed in the 2015 *Bulletin of Information*."); *e.g.*, 2018 Bulletin at 4 ("If changes in the USMLE program occur after the release of this BOI, they will be effective when posted on the USMLE website."). If a policy can be changed, then it necessarily follows that the policy's content or representations cannot reasonably be understood as permanent. Because Plaintiff cannot establish the first element, *i.e.*, that NBME promised her six lifetime attempts at a Step exam, her promissory estoppel claim cannot proceed to the remaining two elements. *See Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (explaining that the first element requires showing "the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee."); *see, e.g.*, *Varonis Sys., Inc. v. Sphere Tech. Sols., LLC*, No. 18-12055, 2019 WL 2119558, at *5 n.10 (D.N.J. May 14, 2019) (declining to analyze additional arguments as to promissory estoppel where the first element was not satisfied).

The parties also dispute whether Plaintiff can even bring this promissory estoppel claim in the first instance. In Pennsylvania, such claims are subject to a four-year limitations period. *See*

*Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000). In her opposition brief, Plaintiff contends the clock to file her promissory estoppel claim started to run on June 10, 2024, the date on which NBME denied her state-sponsored petition for an exception to the four-attempt policy. Opp. Br. at 22; *see* Am. Compl. ¶ 61. She invokes the "discrete acts" and continuing violation doctrines, but, importantly, her arguments as to timeliness concern her ADA claims, not NBME's alleged promise of six lifetime attempts, which forms the sole basis of her estoppel claim. *See* Opp. Br. at 21–24.

Apparently seeking to correct course, Plaintiff asserts in her most recent filing that I cannot decide this issue now because the promissory estoppel claim's timeliness is not readily apparent in the complaint. Pl.'s Sur-Reply at 4. Instead, she posits the date on which NBME cancelled her Step 2 CK exam registration following the policy change is a fact question requiring discovery and separately argues that NBME's retroactively applying the new rule after suspending the Step 2 CS exam during the pandemic raises a tolling issue unsuitable for this screening phase of the litigation.

Again, I disagree. Contrary to Plaintiff's position, the promissory estoppel claim accrued no later than mid-2021 when NBME retroactively applied the four-attempt policy to all prior Step applications. *See* Mot. to Dismiss at 24–25; *see also* Def.'s Reply, ECF 19 at 7–8. Plaintiff's own allegations dictate this conclusion. She alleges that "[u]p until 2021," NBME implemented the six-attempt limit, Am. Compl. ¶ 29; then, NBME ushered in the new four-attempt limit and retroactively applied it "to all prior attempts," *id.* ¶ 30; and as a result, "[a]n individual who, *by mid-2021*, had four failures on any Step"—*i.e.*, Plaintiff—"was *automatically* barred from further participation in the USMLE sequence *going forward*," *id.* ¶ 33 (emphasis added); *see* Opp. Br. at 6 ("[Plaintiff] was automatically barred from the entire USMLE sequence.").

As such, Plaintiff has pleaded that the new rule's impact on her was immediate, and she was aware of its impact, thereby initiating the four-year limitations period during which she should have brought this claim, *see Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 246 (Pa. 2021) ("Normally, a cause of action accrues when an injury is inflicted.") (citation omitted); *see Katz v. Nat'l Bd. of Med. Exam'rs*, 2016 WL 8222071, at *4–6 (M.D. Pa. Nov. 30, 2016), *report and recommendation adopted*, No. 15-1187, 2017 WL 515006 (M.D. Pa. Feb. 7, 2017), *aff'd*, 751 F. App'x 231 (3d Cir. 2018). Therefore, the deadline to file a promissory estoppel claim based on the six-attempt limit expired in mid-2025, well before Plaintiff filed her amended complaint in March 2026. I am therefore constrained to dismiss this claim as untimely. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (permitting dismissal when the claim's untimeliness is "apparent on the face of the complaint").

## III. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted.[9] Dismissal will be with prejudice because I can discern no plausible theory of recovery based on this record, rendering a third "bite at the apple" futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (explaining that denial of leave to amend is justified where "amendment would not cure the deficiency"). An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge

---

[9] Having concluded that Plaintiff has not stated any claims for relief against NBME, I will also deny her renewed motion for a preliminary injunction, ECF 21, which raises similar arguments, because she cannot meet the first two factors—reasonable probability of success on the merits and irreparable harm—that are required to issue injunctive relief. *See Transcon. Gas Pipe Line Co., LLC v. Pa. Env't Hearing Bd.*, 108 F.4th 144, 150 (3d Cir. 2024) (explaining that the moving party's failure "to make either of those threshold showings is fatal to the issuance of a preliminary injunction").